**Oma Belle DAY, Plaintiff-Appellant,**

v.

**Walter J. HICKEL, Secretary of the Interior of the United States, et al., Defendants-Appellees.**

**No. 71–1866.**

United States Court of Appeals, Ninth Circuit.

April 10, 1973.

W. C. Arnold (argued), Anchorage, Alaska, for plaintiff-appellant.

Bradford F. Whitman, Washington, D. C. (argued), G. Kent Edwards, U. S. Atty., Anchorage, Alaska, Shiro Kashiwa, Asst. Atty. Gen., Edmund B. Clark, Dept. of Justice, Washington, D. C., for defendants-appellees.

Before MERRILL, DUNIWAY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

The district court by summary judgment upheld a decision of the Secretary of the Interior which rejected appellant's application for certain lands near Valdez, Alaska, made under the Color-of-Title Act, 43 U.S.C. § 1068. Review by the district court was properly made pursuant to 5 U.S.C. § 704 and this court eyes it under 28 U.S.C. § 1291. We affirm.

On the south side of Port Valdez and to the west of the town of Valdez, Alaska, a spit of land which looks to be less than twenty acres in area extends north-westerly into the waters of the port. A narrow neck of earth connects it with the mainland. The tip of this arm of land which is Jackson Spit, is called Jackson Point.

The mainland near the spit was formerly an army post, Fort Liscum, and since its abandonment has been public domain subject to the patent applications herein described.

In 1929, Andrew S. Day, deceased husband of Oma Belle Day, appellant herein, filed a homestead claim in the District Recording Office at Valdez, Alaska, pursuant to the Act of March 3, 1903, ch. 1002, 32 Stat. 1028, as amended 48 U.S.C. § 371 (1970). This claim included a 50-acre corridor of land to the west of appellant's present homestead, but the claim was never perfected.

The Day family carried on canning operations at Jackson Point for a number of years and constructed a road across the neck, from their mainland holding to the point. Walter Day, son of Andrew, began patent proceedings on the land constituting the western half of Jackson Spit, but abandoned them when he learned the parcel had been patented to one Green or Greenbaum. He later purchased that patent covering the western half of the spit.

Mrs. Day cultivated a garden on the eastern half of the spit and the Days operated a small sawmill there. This eastern half of approximately nine acres is a part of the land claimed in this proceeding and is referred to as Tract One.

In 1950, Andrew Day refiled his homestead claim (160 acres) in the Anchorage Land Office. Appellant contends that this refiling was intended to extend west to a point where appellant's refiled claim would have coincided with the western boundary of the unperfected 1929 patent application and would have

given access along the road to Jackson Spit. In fact, it left a corridor of land consisting of 50 acres between the westerly boundary of the new homestead claim and the westerly boundary of the claim as originally filed. This is the other parcel of the land to which appellant has laid claim under the Color-of-Title Act and is referred to as Tract Two. The total claim involved is some 59 acres. Appellant contends that she was unaware of the discrepancy in the western boundary of the later homestead claim although its boundaries were clearly marked, until the state filed an application for a selection of it. She then filed a color-of-title application under 43 U.S.C. § 1068, and in a separate case, a protest to the state selection.[1]

This application for patent was perfected and a patent issued to Mrs. Day for 160 acres.

The Color-of-Title Act, as amended, 43 U.S.C. § 1068, provides in part:

"The Secretary of the Interior (a) *shall,* whenever it shall be shown to his satisfaction that a tract of public land has been held in *good faith* and in peaceful, adverse, possession by a claimant, his ancestors or grantors, under claim or color of title for more than twenty years, and that valuable improvements have been placed on such land or some part thereof has been reduced to cultivation . . . issue a patent for not to exceed one hundred and sixty acres of such land . . . ." (Emphasis added.)

The Code of Federal Regulations provides in part:

"A claim is not held in good faith where held with knowledge that the land is owned by the United States. . . ." 43 C.F.R. § 2540.0–5(b)

In the administrative proceeding which was lodged with the trial court, the Director of the Bureau of Land Management noted that the claims of adverse possession asserted by appellant in support of her color-of-title application

tion were (1) a homestead location made by her deceased husband but never perfected; (2) a trade and manufacturing site location notice filed by Walter Day for land west of Tract One; and (3) a revised homestead application upon which a patent was issued for 160 acres to appellant for United States Survey No. 3328, and lying east of Tract Two. Physical acts of possession asserted consisted of cultivation of a small garden on Tract One, and use of a sawmill there which was later removed to the patented portion of Jackson Spit. Color-of-title possession was also asserted by the construction of a road across Tract One to appellant's cannery on Jackson Point.

The Director of the Bureau of Land Management determined that the unperfected patent of Mr. Day could not, establish rights and that the subsequent patent to Mrs. Day for 160 acres which did not include Tract Two would constitute a bar to any claim based upon a prior unperfected patent entry. The trade and manufacturing site location was entirely within the land already patented on Jackson Spit, and thus no rights could be based upon it. No proceedings were taken to include the lands used for a sawmill or garden outside the patented land at Jackson Spit and the trade and manufacturing location was closed for failure to take action. The patent for the 160 acres under United States Survey No. 3328 was clearly monumented on the ground and there was, therefore, no basis or merit to the claim of appellant that she believed her patent to include the adjacent Tract Two. Finally, the use of a public domain right-of-way to construct an access road to one's patented land does not constitute a use adverse to the United States because it was in recognition of the government ownership. The Secretary approved the Director's findings and denied the color-of-title application.

In the trial court the appellee filed a motion for summary judgment recognizing the factual claims of Mrs.

1. The validity of this protest is not before us in this proceeding.

Day but asserting that they did not create a genuine issue of fact and that appellee was entitled to judgment as a matter of law. The only opposing affidavit was that of the appellant and was not sufficient in form or content to raise an issue of fact. The court found the facts as the plaintiff asserted them to be, but concluded, as a matter of law, that the appellee should have judgment. The appellant's mistaken beliefs as to boundary could not fulfill the requirement of good faith possession where the boundaries of her patent were clearly marked and there was no evidence of actual *occupancy of Tract Two.*

The history of the Act discloses that as originally enacted in 1928 (Act of December 22, 1928, ch. 47, § 1, 45 Stat. 1069), the Color-of-Title Act provided that when the proper conditions existed "the Secretary may, in his discretion . . ." issue a patent.

As indicated by S.Rep. No. 732, 70th Cong., 1st Sess. (1928), accompanying the bill, the purpose of the Act was to authorize the Secretary to deal with "cases . . . where lands have been held and occupied in good faith for a long period of time *under a chain of title* found defective . . . ." (Emphasis added). No mention was made of cases of possession of land where there was no such chain of title. Thus, the history would indicate that there should be excluded from the intent of the Act, land adversely possessed by one who knew that the title was in the United States, but who had no chain of title to it.

The 1928 Act was amended in 1953 to read as it now does. The legislative history of the amendment indicates that its purpose was to make mandatory what had been discretionary with the Secretary.

"Existing law permits the Secretary of the Interior to issue a patent at his discretion for not more than 160 acres of public land, upon payment of not less than $1.25 per acre, if he is satisfied that the land has been held in good faith and in peaceful, adverse possession by the claimant, his ancestors, or grantors, under claim or color of title for more than 20 years, and that valuable improvements have been placed on the lands or some part thereof has been reduced to cultivation. This bill would make mandatory the issuance of patents in such cases and create a vested right in the land on the part of the setter with a genuine color-of-title claim which meets the requirements." S.Rep. No. 588, 83rd Cong., (1953), 1953 U.S.Code Cong. & Adm.News at pp. 2014, 2015.

■ There having been no change in the claim or color of title requirements, it is not an unreasonable interpretation by the Secretary that possession of lands by one who knows the title is in the United States does not constitute a claim of title which is sufficient under the Act. The Secretary's decisions have followed that interpretation. Lester J. Hamel, 74 I.D. 125, 129 (1967); Nora Beatrice Kelley Howerton, 71 I.D. 429, 434 (1964). In *Howerton,* the Secretary stated:

"Further, even though land may have been occupied, improved, and held by someone else in good faith for more than 20 years under color of title, if a person acquiring the land is aware *that title is in the United States, it* has been held that he is lacking in good faith and has no right to a patent under the Color of Title Act. Anthony S. Enos, 60 I.D. 106 (1948) and 60 I.D. 329 (1949); Clement Vincent Tillion, Jr., A–29277 (April 12, 1963)." 71 I.D. at 434.

The Supreme Court has held that *great deference should be given to the* construction of a statute by an administrative agency, Udall v. Tallman, 380 U. S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). That seems particularly apposite in this case.

Appellant relies heavily on Coleman v. United States, 363 F.2d 190 (9th Cir. 1966), reversed on other grounds, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170,

rehearing denied, 391 U.S. 961, 88 S.Ct. 1834, 20 L.Ed.2d 875 (1968).

"It has long been established that a qualified entryman upon public lands of the United States, whether as a locator of a mining claim, as a homesteader, or as one asserting rights under others of the multifarious laws governing entries on public lands, who perfects his entry by compliance with the applicable Act of Congress, thereby acquires a right to the land as against the sovereign itself, as well as third persons." 363 F.2d at 196.

The Court says nothing in particular about the Color-of-Title Act. It does say that one "who perfects his entry by compliance with the applicable Act of Congress" acquires a right to the land. Appellant's difficulty is that she has not established her compliance with any applicable Act of Congress.

Under her color of title application Mrs. Day stated she was also making application pursuant to 43 U.S.C. § 1431 (Sale of Lands Subject to Unintentional Trespass); 43 U.S.C. § 1171 (Sales of Isolated Tracts); 43 U.S.C. § 682a (Sale of Small Tracts for Residence, Recreation, Business or Community Site Purposes); and 48 U.S.C. § 461 (Purchases for Trade or Manufacture). The Director in his decision of December 3, 1969, which was approved by the Secretary, referred to a trade and manufacturing site location notice which described a parcel of land entirely within United States Survey No. 348 which was already patented and subsequently acquired by the Days from the patentee. That claim would lend no support to the contentions made here.

However, the color of title application also was based upon umbrella claims encompassing several of the other statutory provisions for sales of public lands including a trade and manufacturing claim. The trial court in its Amended Memorandum of Decision and Order disposed of these claims by stating in its Conclusion of Law No. 8:

"8. Applications to purchase public land pursuant to 43 U.S.C.A. §§ 682a, 1171 and 1431 (1964) are not raisable in a Color of Title application and the validity of the Director's decision is in no way affected by his failure to discuss the merits of those claims." C.T. at 123.

No authority is cited to either statute or regulation for this conclusion. Certainly as a matter of the orderly filing and processing of claims, an application under a color of title claim is not the place to tuck in an omnibus claim based on four other unrelated sections.

The Secretary's regulations in many cases require separate applications for each type of entry (43 C.F.R. § 2562.-1(b) for trade and manufacture), specifying in the form the particular information required to support that individual application. Here the information to support the catch-all claims was designated by the reference "see attachment." The attachment was a lengthy statement directed to the color of title application. A review of appellant's statement in the light of the statutory requirements for each of the four claimed entries raises substantial doubt as to its sufficiency. The trial court did not consider these claims on their merits, and found that the Director and Secretary did not either. We therefore decline to pass upon them until they have been properly presented and considered below.

The record indicates there is a competing state selection for a part or all of the lands in controversy. Whether another application or applications under the four collateral sections would be timely, is a matter we also do not reach.

Appellant claims an interest in a right-of-way for road purposes. It is undisputed that she or her husband constructed a road between their mainland patent over the neck, across public domain to Jackson Point. No reference was made to this claim in the color of title application which has ripened into

this litigation. No charge has been made that the United States has closed or threatened to close the portion of the road over public land. Should it do so, appellant might then complain. United States v. 9,947.71 Acres of Land, 220 F. Supp. 328 (D.Nev.1963). We express no opinion on that question here.

A sketch not drawn to scale is attached for purposes of illustration.

The judgment is affirmed.