UNITED STATES of America and Rogers C. B. Morton, Secretary of the Interior, Plaintiffs-Appellants,

v.

Minnie E. WHARTON et al., Defendants-Appellees and Cross-Appellants.

UNITED STATES of America and Rogers C. B. Morton, Secretary of the Interior, Plaintiffs-Appellees,

v.

Minnie E. WHARTON et al., Defendants-Appellants.

Nos. 73–2732, 73–2831.

United States Court of Appeals, Ninth Circuit.

March 18, 1975.

Dirk Snel, Atty., U. S. Dept. of Justice, Land & Resources Div., Washington, D. C., for plaintiffs-appellants.

Jane Edwards (argued), of Burns & Edwards, Portland, Or., for defendants-appellees.

## OPINION

Before BROWNING and WRIGHT, Circuit Judges, and LINDBERG,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The government appeals from a judgment of the district court ordering the Secretary of the Interior to issue a patent to 40 acres of public land claimed by the defendants under the Color of Title Act, 43 U.S.C. § 1068. The defendants cross-appeal, contending that the government should be estopped from claiming ownership of the land.

## FACTUAL BACKGROUND

The facts stated in pretrial stipulations and in the district court's opinion are essentially these:

Curtis Wharton and his wife, Minnie, moved onto a tract of Oregon land some time prior to September 1919, when he filed an application to reclaim the land under the Desert-Land Entry Act of 1877 (now 43 U.S.C. § 321 et seq.).

The Land Office of the Department of Interior approved the application, and Wharton began to develop the land. He sank two wells, fenced 20 of the 40 acres, and cleared three acres for farming and bee-keeping. The state issued him a permit to appropriate water used for irrigation.

Under the Desert-Land Entry Act, Wharton was entitled to a patent upon payment of $1.00 per acre and a showing that he had reclaimed and cultivated the land. He worked the land as required but, because of family illness and destruction of much of his property by fire, he neglected to pay the $40 fee or show final proof of reclamation. The General Land Office cancelled his entry in February 1930.

The Whartons remained on the land without interference or objection by the government and reared there a family of nine children, all of whom are defendants here. Curtis Wharton died in 1949.

After 1930 there was no communication between the government and the Whartons until December 28, 1954, when Mrs. Wharton wrote to the Bureau of Land Management (BLM), requesting an opportunity to prove that the land was reclaimed. In March 1955, the BLM advised her for the first time that she was trespassing but that she would be notified what kind of application she could file to gain title. Having no further response, Mrs. Wharton wrote again in January 1956. In April of that year, the BLM again advised her she was trespassing but that she could refile an application under either the Homesteading Law or the Desert-Entry Act. For lack of money, she did not do so.

Mrs. Wharton remarried in 1957 and moved from the farm and her son, John, then returned to it. He called at the BLM office in Vale, Oregon, inquired how to obtain a deed to the property, and was told there was no way for him to get one.

* Senior District Judge, Western District of Washington.

In December 1966, John Wharton sought help from Representative Al Ullman and Ullman wrote promptly to the BLM. Almost five months later, when it was still possible to file an application for a patent under the homesteading laws or the Desert-Land Entry Act, the BLM answered that there was nothing the Whartons could do to obtain a patent. In May 1967, less than two weeks after its letter to Congressman Ullman, the BLM reclassified the land, making it impossible to obtain new desert-land entries.

Shortly thereafter, the BLM informed John Wharton that he was trespassing and ordered him from the land, the first time that a government representative had told any of the Whartons to vacate.

After the government sued for ejectment, the defendants counterclaimed, asking for a patent. The case was held in abeyance to permit them to seek one under the Color of Title Act, 43 U.S.C. § 1068(a). The application was denied by the Oregon State Office of the BLM, which was affirmed by the the Interior Board of Land Appeals. The district court held that the Board's decision was clearly erroneous, ordered the Secretary of the Interior to allow the Whartons to purchase the 40-acre tract in accordance with § 1068(a), and the government appealed.

### GOOD FAITH UNDER COLOR OF TITLE ACT

The Color of Title Act, 43 U.S.C. § 1068(a) authorizes adverse possession claims against the United States.[1]

However, under Department of Interior Regulations, knowledge of federal ownership of the land in question negates the "good faith" required by the act.[2] We upheld this interpretation of "good faith" in Day v. Hickel, 481 F.2d 473 (9th Cir. 1973), saying:

> . . . it is not an unreasonable interpretation by the Secretary that possession of lands by one who knows the title is in the United States does not constitute a claim of title which is sufficient under the Act.

> \*   \*   \*   \*   \*   \*

> The Supreme Court has held that great deference should be given to the construction of a statute by an administrative agency. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

481 F.2d at 476.

The Board's denial of a patent was based primarily on the finding that the Whartons had knowledge of federal ownership of the land and thus were precluded from asserting a good faith color of title claim.

As a reviewing court, under 5 U.S.C. § 706(2)(A), (E) and (F), we may set aside agency actions, findings, and conclusions which are

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

   \*   \*   \*   \*   \*   \*

(E) unsupported by substantial evidence . . . ;

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

■ In denying the Whartons a patent the Board followed its prior rulings and practices, and conformed to the Color of Title Act as interpreted by the Secretary of the Interior and by this court in Day v. Hickel, *supra*. The Board's action was therefore neither arbitrary, capricious, nor an abuse of dis-

---

1. Section 1068(a) provides, in part that:

"The Secretary of the Interior (a) shall, whenever it shall be shown to his satisfaction that a tract of public land has been held in good faith and in peaceful, adverse, possession by a claimant, his ancestors or grantors, under claim or color of title for more than twenty years, and that valuable improvements have been placed on such land or some part thereof has been reduced to cultivation, . . . issue a patent for not to exceed one hundred and sixty acres of such land upon the payment of not less than $1.25 per acre . . . ."

2. 43 C.F.R. § 2540.0–5(b).

cretion, and was in accordance with the law.

■ An agency fact finding is subject to *de novo* review in two instances: when the action authorized is adjudicatory in nature and the fact finding procedure is inadequate, and in another instance not here relevant. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The government concedes that the decision of the Board was adjudicatory in nature. However, the Whartons do not claim the fact finding procedure was inadequate, and we find nothing in the record to so indicate.

■ Absent *de novo* review a court may reverse an agency fact finding only if the findings of fact are not supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).[3]

■ The only disputed factual issue relevant here was the "good faith" nature of the claim that is, the extent of the Whartons' knowledge of federal ownership of the land. Although we might have come to a different conclusion on this issue, we cannot say that the Secretary's decision was not supported by substantial evidence as that term is defined above.

The district court thus erred in directing that a patent be granted the Whartons under the Color of Title Act.

## ESTOPPEL AGAINST THE GOVERNMENT

■ The Whartons contend that if they are denied a patent under the Color

of Title Act, the government should be estopped from claiming ownership of the land. The district court concluded that estoppel did not apply against the government. We disagree.

The government maintains that the rule is settled that estoppel cannot be invoked against the government, citing U.S. Immigration and Naturalization Service v. Hibi, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973). In *Hibi*, a citizen of the Philippines petitioned for citizenship in September 1967 under the Nationality Act of 1940 which allowed certain aliens to obtain United States citizenship while serving in the United States Armed Forces during World War II. Under that Act a petition had to be filed by December 31, 1946. Hibi argued that the government was estopped from raising the statute of limitations because it had not advised him of his right to apply for citizenship while he was serving in the Army. The majority of the Court did not believe that simply failing to advise the respondent of his rights was sufficient to estop the government:

> " 'As a general rule, laches or neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest. . . . ' Utah Power and Light Co. v. U. S., 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791."

*Hibi*, 414 U.S. at 8, 94 S.Ct. at 21.

However, there was a vigorous dissent, and the majority qualified its holding by saying that, although the question of whether *affirmative misconduct* (rather than mere neglect) on the part of the government might estop it had been left open in Montana v. Kennedy, 366 U.S. 308, 314, 315, 81 S.Ct. 1336, 6 L.Ed.2d

---

**3.** "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." NLRB v. Columbia Enameling and Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939).

"This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. NLRB v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106, 62 S.Ct. 960, 961, 86 L.Ed. 1305 . . . .." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

This circuit follows the "substantial evidence" rule as stated in *Consolo. See* White v. Udall, 404 F.2d 334 (9th Cir. 1968); Henrikson v. Udall, 350 F.2d 949 (9th Cir. 1965).

313 (1961), no such conduct was involved in *Hibi*. The Court did not preclude invoking estoppel against the government.

In the case before us, the Whartons assert affirmative misconduct on the part of BLM officials, not merely a failure to advise them of their rights. John Wharton had approached government officials to determine what his family could do to gain title to the land. Those officials misrepresented to him that there was no way at a time when it was still possible to do so.

The government suggests that, even if it had told the Whartons prior to May 11, 1967 that they could file a new desert-entry application, such advice would have availed them nothing since the land would first have to be classified for settlement.

An entry under the Desert Land Entry Act would have required a special classification by the Secretary of the Interior in order to open up the land under the Taylor Grazing Act of 1934 as amended in 1936, 43 U.S.C. § 315f. However, § 315f provides that an entry application is to be considered as a request for classification. There is no evidence that such a procedure was unusual or that permission was rarely granted under the Act. It is hard to imagine that a favorable classification would not be forthcoming in view of the fact that the Whartons had already farmed and improved the land for many years.

Moreover, had the Whartons filed an application under the Desert Land Entry Act, 43 U.S.C. § 321 et seq., the Secretary would have been precluded from proposing a classification which would have withdrawn the land from settlement. Section 1417(b) of the 1964 Act

entitled Classification of Lands to Provide for Disposal or Interim Management [43 U.S.C. § 1411 et seq.] provides:

> Nothing herein contained shall be construed as—
>
> * * * * * *
>
> (b) Restricting the entry and settlement of lands open to settlement under the public land laws pending action inconsistent therewith under this subchapter.

Such inconsistent action, classification for multiple use, did not occur until May 11, 1967.

The Secretary also argues that the Whartons' reliance on United States v. Georgia-Pacific Corporation, 421 F.2d 92 (9th Cir. 1970), is misplaced since it concerned a private contract rather than an attempt to gain title to public lands. In *Georgia-Pacific* we held that estoppel could be applied against the government, saying that "the dictates of both morals and justice indicate that the Government is not entitled to immunity from equitable estoppel in this case." *Id.* at 103.[4]

Since *Georgia-Pacific* we have made it clear that estoppel may be applied against the government acting in its sovereign capacity. *See* United States v. Lazy FC Ranch, 481 F.2d 985 (9th Cir. 1973). And our decision in Standard Oil Co. v. California, 107 F.2d 402, 416 (9th Cir. 1939), indicates recognition of the principle that estoppel can apply against the government even in disputes over public land, although in that case no sufficient showing of laches or estoppel was made.[5]

This circuit's position on estoppel and its availability as a defense against the government was clearly expressed in United States v. Lazy FC Ranch, *supra*.

---

**4.** The issue in *Georgia-Pacific* was enforcement of a private contract to gain title to new lands, not preservation of public lands; however, we did not preclude the possibility of estoppel in the latter instance. We noted only that, because the issue under consideration was one of contract, the government was acting in a proprietary rather than a sovereign role, and we did not have to decide if the government could be estopped while acting in its sovereign capacity.

**5.** Other courts have permitted estoppel to be used against the government in cases involving public land, or have indicated that estoppel would have applied on a proper showing of misrepresentation or reliance on governmental action. United States v. Big Bend Transit Co., 42 F.Supp. 459 (E.D.Wash.N.D.1942); Udall v. Oelschlaeger, 129 U.S.App.D.C. 13, 389 F.2d 974 cert. denied 392 U.S. 909, 88 S.Ct. 2056, 20 L.Ed.2d 1367 (1968).

This court there allowed estoppel to be invoked against the government in an action by it to recover excess payments made to several partners under the Soil Bank Program. The government had helped to arrange and had approved a contractual agreement which enabled the partners to qualify for the payments. It was this arrangement which the government was contesting. In applying estoppel against the government, we relied on Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951), in which the Supreme Court permitted the government to be estopped even though it was acting in a sovereign capacity. To do otherwise, the Court indicated, would violate notions of "elementary fairness." *Id.* at 47, 71 S.Ct. 553. In *Lazy FC Ranch* we noted that this court had previously followed the *Moser* rationale and permitted estoppel to be used against the government where basic notions of fairness required it to do so, citing Schuster v. C.I.R., 312 F.2d 311 (9th Cir. 1962), and Brandt v. Hickel, 427 F.2d 53 (9th Cir. 1970).[6]

We summarized these prior decisions in *Lazy FC Ranch* by saying:

> The *Moser-Brandt-Schuster* line of cases establish the proposition that estoppel is available as a defense against the government if the *government's wrongful conduct threatens to work a serious injustice and if the public's interest would not be unduly damaged by the imposition of estoppel.* . .
> This proposition is true even if the government is acting in a capacity that has traditionally been described as sovereign . . . although we may be more reluctant to estop the government when it is acting in this capacity.

6. In *Schuster*, the Commissioner of Internal Revenue originally determined that certain assets of an estate were not taxable. Relying on the ruling, the trustee distributed the assets to the beneficiary. A year later, the commissioner reversed his decision and sent notices of deficiency to the trustee and beneficiary. This court held that the commissioner was estopped from holding the trustee liable for any tax deficiency. Although we recognized the general principle that estoppel could not be asserted against the government, we ruled that the commissioner could not always correct a

481 F.2d at 989. (Emphasis added.)

Our recent decision in United States v. Cappaert, 508 F.2d 313 (9th Cir., 1974), cited by the government, is distinguishable.

The Cappaerts entered into a land exchange with the government in 1969. They received the land under a patent which granted them "all rights, privileges, immunities and appurtenances . . subject to any vested and accrued water rights for mining, agriculture, manufacturing, or other purposes. . . . " 508 F.2d at 319. They drilled wells and pumped water on the land. The wells were hydraulically connected to Devil's Hole, the habitat of the rare pupfish, in the Death Valley National Monument. The pumping lowered the level of water in Devil's Hole, thus endangering the existence of the pupfish.

The government asked the Cappaerts to limit their pumping to a level at which the pupfish could survive. The Cappaerts contended that the government was estopped from enjoining their unrestricted use of their wells because it knew at the time of the land exchange that water wells would be drilled, and had specified only that no wells should be drilled within a mile of Devil's Hole. The Cappaerts admitted they had no oral understanding with the government agents about water pumping and that the agents made no oral representations to them on this matter.

The court said that, *under the facts of that case,* estoppel could not be invoked against the government, citing Mr. Justice Black's statement in United States v. California, 332 U.S. 19, 40, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947):

> legal mistake regardless of the injustice which will result.
> Brandt v. Hickel, 427 F.2d 53 (9th Cir. 1970), involved a letter from a BLM office in Los Angeles advising two applicants for an oil and gas lease that they would not lose their priority if they refiled a corrected application form within 30 days. This promise was unauthorized by statute, regulation, or decision. Another person filed before they refiled, and the Secretary of the Interior determined they had lost their priority. We held that the Secretary's decision was inconsistent with due proc-

The Government . . . and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their *acquiescence, laches* or *failure to act*

508 F.2d at 319. (Emphasis added.)

The *Cappaert* holding thus was limited to the facts therein. Moreover, in the case before us, the Whartons do not claim they are entitled to the land because of the government's acquiescence, laches or failure to act. Rather, they complain of affirmative misconduct on the part of government officials who gave them incorrect information.[7]

The test of estoppel applied in this circuit was outlined in Georgia-Pacific, 421 F.2d at 96:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

### ELEMENTS OF ESTOPPEL

The affirmative misconduct of which the Whartons complain consists of the following:

> (1) the BLM at Vale gave John Wharton erroneous advice in 1957; and
>
> (2) officers of the BLM made misrepresentations to John Wharton through Congressman Ullman prior to

May 11, 1967, when the land was finally withdrawn from entry.

The Whartons also contend that the government should be estopped from claiming title because it delayed for over forty years in taking any legal action against them. Because we conclude that estoppel exists on the basis of the first two grounds mentioned, we do not reach that question.

Using the test of estoppel as outlined in *Georgia-Pacific, supra*, it is undeniable that all the elements of estoppel have been met. The BLM clearly knew (or should have known) that the Whartons could still file a desert entry application, and that in the near future a proposed classification would be made which withdrew the land from entry. The BLM had every reason to believe that the Whartons would act on its advice. The Whartons were ignorant of the true facts or they would have filed an application without making inquiry of the BLM. There is no question that they relied to their detriment on the erroneous advice given to them by the BLM. Thus there exist both misleading statements and conduct which would give rise to estoppel between private parties, bringing the Whartons' claim within the exceptions suggested in both *Cappaert* and *Hibi*.

Further, applying the test enunciated by this court in *Lazy FC Ranch, supra*, it is clear that estoppel is applicable here. Governmental conduct would work a serious injustice if this family were divested of the home in which they have invested so much of themselves.

The interest of the public would not be unduly threatened or damaged by in-

ess since the plaintiffs had not been properly notified what to do. The erroneous advice of the L.A. office was held to estop the Secretary. We noted that:

> "Not every form of official misinformation will be considered sufficient to estop the government (citation omitted). Yet some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision making process that the government may be estopped from disavowing the misstatement."

427 F.2d at 56.

7. This court in *Cappaert* cited Beaver v. United States, 350 F.2d 4 (9th Cir. 1965), for the rule that estoppel may not be invoked against

the government. In *Beaver* we said only that the government could not be estopped from asserting title to land simply because it had allowed others to possess it. There was no claim of affirmative misconduct on the part of the government.

Further, in *Cappaert*, this court did not totally preclude the use of estoppel against the government. We said:

> "Even if the doctrine of estoppel were available against the government, it could not be applied here because there were no *misleading statement* or *conduct that would give rise to an estoppel between private parties.*"

508 F.2d at 320. (Emphasis added.)

voking estoppel against the government and granting the occupants an opportunity to obtain this small tract of desert land. The public will be damaged to no greater extent now than it would have been had the original entry been completed. To the contrary, the public interest will be served by the addition of the land to the tax rolls once the Whartons have gained title. And, perhaps more importantly, the public has an interest in seeing its government deal carefully, honestly and fairly with its citizens.[8]

The district court erred in not applying estoppel. The Secretary should be estopped from claiming the Whartons' application is untimely and should be directed to entertain an application of the type the Whartons could have filed in 1956, using the standards for classification of the land which existed at that time.

Reversed and remanded for proceedings consistent with this opinion.

---

8. *See* Union Oil Company v. Morton, 512 F.2d 743, (9th Cir., 1975), footnote 2, for a discussion of the balancing of the public inter-est against private equities in applying estoppel against the government in cases involving *rights to public land.*