# THE UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, Appellant, *v.* DELOS W. HOOD, Respondent.

## No. 15468

April 26, 1985                              699 P.2d 98

*Lamond R. Mills,* United States Attorney, *Shirley Smith,* Assistant United States Attorney, Reno, Nevada; *Glenn L. Archer, Jr.,* Assistant Attorney General, *Michael L. Paup, William S. Estabrook* and *Bruce R. Ellisen,* Attorneys, Tax Division, Department of Justice, Washington, D.C., for Appellant.

*Cal Hoover,* Reno, for Respondent.

# OPINION

*Per Curiam:*

This appeal addresses the issue of whether an award of attorney fees and costs may be awarded against the United States when the suit is brought in a state court. Appellant contends that sovereign immunity, with respect to attorney fees and costs, has not been waived so as to permit such an award. We disagree. For the following reasons we conclude the district court's award was proper.

Delos W. Hood (Hood) owned certain real property situated in Reno, Nevada. On March 28, 1979, Hood sold the property to Charles R. Silver (Silver) and Linda Province (Province) using an executory land sale contract. Pursuant to the terms of the contract and accompanying escrow instructions, legal title to the property would not pass to the purchasers until the entire balance of the contract price, secured by a first deed of trust encumbering the property, was paid in full by the purchasers. The contract further provided that upon default the purchasers would relinquish all rights under the agreement and that all monies paid by the purchasers would be considered rent for the use of the property to the time of default and as settled and liquidated damages.

Beginning in November 1980, and thereafter, Silver and Province defaulted under the terms of the contract by failing to make timely monthly payments. In May 1981, Province conveyed her interest in the property to Silver.

On October 30, 1981, the United States assessed a federal tax deficiency against Silver in the amount of $84,415.82. Thereafter, on November 5, 1981, the United States recorded with the county recorder of Washoe County, Nevada, a notice of federal tax lien against Silver based upon the unpaid taxes.

Hood mailed a notice and demand to Silver and Province on November 18, 1981, advising them to cure their default within 35 days or face forfeiture of their interest in the property. The default was not cured and on January 13, 1982, Silver's interest in the property was extinguished by a nonjudicial forfeiture and recordation of a quitclaim deed from Silver and Province to Hood.

Hood had no actual notice of the federal tax lien against Silver until it was disclosed in a preliminary title report on December 31, 1981. Hood resorted to administrative procedures promulgated by the IRS in an attempt to remove the lien. Hood was denied relief and was advised that the IRS was in search of a good test case on which to determine the validity of the loss of its lien through forfeiture under executory land sale contracts.

The United States asserted that the lien attached to Silver's equitable interest in the property and wasn't extinguished by the nonjudicial forfeiture because Hood had failed to give notice of the forfeiture to the United States. The United States based its position upon the Federal Tax Lien Act of 1966, 26 U.S.C. § 7425(b), which provides that when the United States has or claims a tax lien against property ". . . a sale . . . made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgment on the obligation secured by such an instrument, or pursuant to a nonjudicial sale under a statutory lien on such property . . ." shall be made subject to the tax lien if notice of the sale is not given in writing by certified or registered mail or by personal service to the Secretary of the Treasury not less than twenty-five days prior to the sale.

Prior to filing his quiet title suit, Hood advised the IRS of recently published opinions of the federal courts directly addressing that issue. *See* Hedlund v. Brellenthin, 520 F.Supp. 81 (W.D. Wash. 1981); United States v. Wharton, 514 F.2d 406 (9th Cir. 1975). In addition, approximately one week prior to trial the United States Circuit Court for the Ninth Circuit entered a decision in Brookbank, Inc. v. Hubbard, 712 F.2d 399 (1983), affirming its prior position in Runkel v. United States, 527 F.2d 914 (9th Cir. 1975), and that of *Hedlund.* These cases were diametrical to the government's position and held that a forfeiture of a real estate contract was not a sale of property within the meaning of 26 U.S.C. § 7425(b). Notwithstanding this information, the IRS sought a decision from a Nevada court, thus creating a Nevada precedent.

The district court, as would be expected, rejected the United States' argument and held that the instant case did not involve a "nonjudicial sale" of property within the meaning of Section 7425; therefore, notice of the forfeiture was not required.

Accordingly, the court entered the judgment quieting Hood's title in the property. The court also provided that Hood receive judgment for his costs and reasonable attorney's fees. Judge Barrett ruled that the United States was "not substantially justified, or at all, in requiring . . . [Hood] to expend time, effort and money to protect his property rights." Moreover, "[i]f ever there were a case in which a governmental party should be required to reimburse an individual for costs and attorney's fees, this is it."

The United States is not challenging the district court's decision in the underlying quiet title action. By not appealing the substantive issue, the IRS has avoided the establishment of a Nevada precedent contrary to its position, thereby preserving the potential for a similar action against another property owner in what the IRS might hope to be a more receptive forum. We therefore note in this opinion that notice in this type of situation is not necessary and to commence litigation for lack of such notice is improper.

The United States is, however, challenging the district court's jurisdiction to award attorney's fees and costs to respondent. The United States contends that sovereign immunity was not waived so as to permit such an award. An examination of Title 28 reveals the infirmity of appellant's position.

It is recognized that the United States, as sovereign, is immune from suit in the absence of its consent to be sued. United States v. Testan, 424 U.S. 392, 399 (1976). Moreover, the waiver of sovereign immunity "cannot be implied but must be unequivocally expressed" by Congress. Thus, the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. *Id.* Accordingly, it is well settled that costs and attorney's fees cannot be awarded against the United States absent a specific waiver of sovereign immunity. Ruckelshaus v. Sierra Club, 463 U.S. 680 (1983).

Sovereign immunity is waived by the United States in an action for quiet title pursuant to 28 U.S.C. § 2410, which provides in relevant part as follows:

> (a) Under the conditions prescribed in this section and section 1444 of this Title for the protection of the United States, the United States may be named as a party in any civil action or suit in any district court, or in any state court having jurisdiction of the subject matter—(1) to quiet title to, real or personal property on which the United States has or claims a mortgage or other lien.

Continuing, 28 U.S.C. § 2412(a) specifically provides that "any court having jurisdiction of such action" brought by or against the United States, may award costs as enumerated in 28 U.S.C. § 1920. 28 U.S.C. § 2412(b) clearly provides that "any court having jurisdiction of such action" may award reasonable attorney fees and expenses to the prevailing party in any civil action brought by or against the United States. As stated earlier, section 2410 clearly gives the state court, being an appropriate forum, jurisdiction to entertain the quiet title action. Hence, the state court must necessarily be included within the language of "*any court having jurisdiction.*" (Emphasis added.)

The United States takes the position that when section 2412 made reference to § 1920 concerning allowable costs that may be awarded, that it also incorporated the prefatory language of § 1920. Section 1920 utilizes the language "any court of the United States," as opposed to "any court having jurisdiction." The former phrase is defined in 28 U.S.C. § 451 as follows:

As used in this title:

The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by Chapter 5 of this title, including the Court of Claims, the Court of Customs and Patent Appeals, the Customs Court and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

This definition thus indicates "courts of the United States" are Article III courts. Hence, the United States contends that inasmuch as the district court was not an Article III court, it could not award costs against the United States. Moreover, the United States contends it would be anomalous to hold that attorney's fees and other expenses could be awarded on the authority of Sections 2412(b) and (d), if the court has no authority to award costs under 2412(a). *See* Bowen v. C.I.R., 706 F.2d 1087 (11th Cir. 1983).

Unlike *Bowen,* we do not view the words "as enumerated in § 1920" as incorporating the restricting jurisdictional language also found in that section. To so hold would render the language in § 2412—"in any court having jurisdiction" superfluous. We are convinced that reference to § 1920 was only for the purpose of setting forth the costs which could be awarded and not to limit the waiver of sovereign immunity. Indeed, it would be an injustice to deprive a prevailing party of attorney fees and costs merely because that party chose to litigate in a state court, as specifically authorized by § 2410, as opposed to a federal court.[1]

---

[1]Moreover, it appeared from the argument of counsel that respondent was actually encouraged by appellant to file suit in state court. Such conduct, if true, makes appellant's position on appeal all the more unbecoming.

The language is plain and clearly gives the state court authority to award attorney fees and costs. Accordingly, we hold that the appeal of this issue was frivolous and therefore order appellant to pay costs and reasonable attorney fees incurred by Hood as a result of this appeal. The district court's decision is hereby affirmed.