# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                                                     Elisabeth A. Shumaker
Clerk                                                                                       Chief Deputy Clerk

August 8, 1996

TO: ALL RECIPIENTS OF THE CAPTIONED OPINION

RE: 95-1256 Double J. Land & Cattle v. U.S. Dept. of the Interior
    July 26, 1996 by The Honorable Carlos F. Lucero

Please be advised of the following correction to the captioned decision:

The file date on the August 6, 1996 change memo and the file stamp date appearing on the revised opinion are incorrect.  The correct date of filing is July 26,

Please make the appropriate correction to your copy

Very truly yours,

Patrick Fisher, Clerk

Beth Morris
Deputy Clerk

# UNITED STATES COURT OF APPEALS
## Tenth Circuit
## Byron White United States Courthouse
## 1823 Stout Street
## Denver, Colorado 80294
## (303) 844-3157

Patrick J. Fisher, Jr.                                          Elisabeth A. Shumaker
Clerk                                                          Chief Deputy Clerk

August 6, 1996


**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:** 95-1256  Double J. Land & Cattle v. U.S. Dept. of the Interior, et al.
June 26, 1996 by The Honorable Carlos F. Lucero


Please be advised of the following correction to the captioned decision:

The footnotes which were referenced by double asterisk (**) have been changed to numerals 1 and 2.

Enclosed please find a revised copy.

Very truly yours,

Patrick Fisher, Clerk



Beth Morris
Deputy Clerk


encl.

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**FILED 7/26/96**

DOUBLE J. LAND & CATTLE CO. and
PETER A. JAFFE,

       Plaintiff - Appellants,

v.

UNITED STATES DEPARTMENT OF
THE INTERIOR, BUREAU OF LAND
MANAGEMENT,

       Defendants - Appellees.

No. 95-1256

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 93-C-1306)**

Peter A. Jaffe, Jaffe and Asher, Vail, Colorado, for Plaintiffs-Appellants.

Tamara N. Rountree, Dep't of Justice, Washington, D.C. (Lois J. Schiffer, Assistant
Attorney General, Washington, D.C., Henry L. Solano, United States Attorney, Robert D.
Clark, Assistant United States Attorney, Denver, Colorado, David C. Shilton, Dep't of
Justice, Washington, D.C., with her on the brief; Lowell J. Madsen, Regional Solicitor's
Office, Dep't of Interior, Denver, Colorado, of counsel), for Defendants - Appellees.

Before **SEYMOUR**, Chief Judge, **ALARCÓN**[*] and **LUCERO**, Circuit Judges.

---

[*] The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth
Circuit, sitting by designation.

**LUCERO**, Circuit Judge.

This case presents a novel issue. Appellants, who openly concede that they are trespassing on public land, nevertheless seek to estop the United States Government, acting through the Department of Interior's Bureau of Land Management, from ordering them to remove a dam and pond constructed on federal land in December 1988. Underlying their argument is the belief that they are entitled to base a claim of estoppel upon a naked reliance on asserted government misrepresentation, without any underlying claim of title to the land itself. We conclude that the government may not be estopped from evicting a trespasser who has not attempted to establish a colorable claim of title to public land.

**I**

This is the second lawsuit between Double J. Land & Cattle Co. ("Double J"), a cattle ranching operation, and BLM, arising from a land exchange in western Colorado. Prior to the exchange, Double J owned two separate parcels in northern Eagle County: a main ranch of 1,125 acres, and a 555 acre parcel known as the "little place." In the exchange, the government obtained title to the "little place," and by so doing removed an impediment to access to 12,000 acres of public lands. In return, Double J received parcels adjacent to the main ranch totaling approximately 489 acres, and 60 additional acres in Garfield County. One of Double J's interests in the exchange was to "cure"

2

trespasses on public lands it had occupied and enclosed by acquiring title to those lands. The land exchange was completed on June 3, 1987 although a lawsuit regarding the legality of an easement reserved by BLM was not resolved until 1990.

While the easement litigation was still pending, BLM learned that Double J had constructed a dam and pond on public land fenced in by prior owners of the ranch, just beyond the western edge of the property. The dam and pond are located in the northwest quarter of Section 29, Township 2 South, Range 84 West, Sixth Principal Meridian and will be referred to in this opinion as the "Section 29 trespass." BLM issued a Notice of Trespass addressed both to Double J and to appellant Peter A. Jaffe, counsel of record and apparently a corporate officer of Double J. See 43 C.F.R. § 2801.3(b). Double J immediately filed a Rule 60(b) motion, seeking to void the settlement of the easement litigation on the grounds of fraud or mistake, and raising several of the same objections to the Notice of Trespass appellants raise today. The magistrate judge assigned to hear the motion recommended that it be denied, and the district court accepted the recommendation.

While the Rule 60(b) motion was pending, Double J and Jaffe appealed the Notice of Trespass to the Interior Board of Land Appeals (IBLA). BLM then forwarded its case file to the IBLA as required by Utah Chapter Sierra Club, 114 I.B.L.A. 172 (1990). BLM did not, however, serve appellants with copies of the case file. Appellants requested an evidentiary hearing before the IBLA, but were denied. Appellants contended that BLM

3

represented that the 1987 land exchange would cure <u>all</u> trespasses on public land by Double J, that the BLM concealed the existence of the trespass on the western boundary of its property, and that Jaffe is not a proper party.

The IBLA treated appellants' primary contention as one of equitable estoppel against the government and rejected it. <u>Double J Land and Cattle Co.</u>, 126 I.B.L.A. 101, 106-07 (1993). The IBLA assumed that a trespasser on public lands may invoke estoppel against the government upon a showing of "affirmative misconduct." <u>Id</u>. at 107. It noted that BLM had never represented that the land exchange would cure all trespasses, nor did it conceal the existence of the trespass at issue from Double J. The IBLA did not address the question of whether Jaffe was a proper party to the action.

Appellants then filed this suit in the district court under 5 U.S.C. § 702. They claimed that BLM's failure to serve copies of the entire case file on appellants violated agency procedures and resulted in severe prejudice to them. <u>See</u> 43 C.F.R. § 4.22(b) (requiring service on opposing parties of "each document" presented to the IBLA). Further, appellants alleged that the IBLA abused its discretion by denying them an evidentiary hearing. Appellants did not request, as Double J had in the easement litigation, that the land exchange be set aside, nor did they seek reformation of the exchange to conform to Double J's expectations.[1] Instead, they conceded that only

---

[1] Double J's decision not to seek reformation of the land exchange in this litigation is somewhat perplexing considering that if it had, it would have a stronger claim of entitlement to the land in question. Double J did not seek reformation, yet BLM raised

4

"three of the four trespasses were cured by the exchange. The fourth trespass [became] the subject of the Notice [of Trespass]." Complaint at ¶ 32. Double J reasserted its main contention that the BLM was estopped from complaining about the Section 29 trespass, and Jaffe reasserted his claim that he is not a proper party.

In its final order, the district court rejected appellants' claims. Like the IBLA, the district court assumed that an estoppel defense is available to a trespasser on public lands who has not attempted to establish a colorable claim to the property. The district court found that BLM had indeed failed to follow its own procedures in not serving the case file, but as the error was harmless, no denial of due process occurred. It found no abuse of discretion in the denial of an evidentiary hearing. Finally, noting the absence of evidence in the administrative record relating to Jaffe's relationship with Double J, it found no abuse of discretion in the IBLA's failure to dismiss him from the case.

On appeal, Double J claims that it was deprived of the opportunity to prove BLM's affirmative misconduct by BLM's failure to serve the case file and the IBLA's refusal to allow an evidentiary hearing. Double J "does not claim that the trespass was cured by the land exchange." Appellants' Reply Br. at 2. Double J argues only that estoppel may lie against the government because, even though the company has no patent or other

---

collateral estoppel as an affirmative defense to reformation. The district court rejected BLM's argument in an interlocutory order. Although this order paved the way for Double J to argue that it had a contractual entitlement to the land, it elected to rely on its estoppel defense alone.

document suggesting that it is entitled to occupy the Section 29 trespass, it detrimentally relied upon BLM's alleged misrepresentations that the trespass would be cured by the exchange. We affirm the district court's judgment as to Double J, although on different grounds than those relied upon below. See United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (appellate court may affirm on any grounds supported by the record). We reverse the district court's finding that IBLA did not abuse its discretion in declining to dismiss Jaffe as a party.

**II**

Both sides focus on whether the IBLA afforded appellants due process.

The Due Process Clause protects against the improper deprivation of a significant property interest. 'Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'

Franklin Savings Ass'n v. Office of Thrift Supervision, 35 F.3d 1466, 1471 (10th Cir. 1994) (quoting Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895 (1961)) (further quotation and internal brackets omitted). In order to trigger the protections of the Due Process Clause, Double J must show that it has a "legitimate claim of entitlement" to remain on the Section 29 trespass. Richman v. Straley, 48 F.3d 1139, 1143 (10th Cir. 1995) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). Before we determine whether appellants' due process rights were protected, we must inquire as to whether Double J has a protected interest in estopping the government from

6

complaining of its acknowledged trespass on public lands. We cannot simply assume that an interest protected by the Due Process Clause exists and then inquire as to whether the parties have received the process due to them. Id.; Franklin Savings, 35 F.3d at 1471.

Appellants' complaint filed in the district court merely contends that "the BLM should be equitably estopped from enforcing the Notice [of Trespass]." Complaint at ¶ 35. Double J does not allege statutory adverse possession or ownership of the property, nor does it seek reformation of the contract to conform to its alleged expectations. In short, Double J offers no legal theory to support its claim to the Section 29 trespass other than its bald belief that an estoppel defense is appropriate to preclude enforcement of a Notice of Trespass if the government has affirmatively misled the trespasser into believing it properly occupied the land -- even if the trespass is not under a claim of right.

Based on the Ninth Circuit's decision in United States v. Ruby Co., 588 F.2d 697 (9th Cir. 1978), the IBLA assumed that an estoppel defense was available to Double J and Jaffe. However, Ruby Co., like our decision in Sweeten v. U.S. Dep't of Agric., 684 F.2d 679, 682 (10th Cir. 1982), dealt with a claim that the government's erroneous survey of the boundaries between private and public land estopped it from denying the private landowners' interpretation of the boundaries established by land patents. Ruby Co., 588 F.2d at 701. In these cases, the parties seeking to estop the government did not concede that they were trespassers.

7

Estoppel against the government is disfavored. We have said that "'[i]t is far from clear that the Supreme Court would ever allow an estoppel against the government under any set of circumstances.'" DePaolo v. United States (In re DePaolo), 45 F.3d 373, 376 (10th Cir. 1995) (quoting F.D.I.C. v. Hulsey, 22 F.3d 1472, 1490 (10th Cir. 1994)). Nevertheless, we have countenanced application of the estoppel doctrine against the government when doing so would not "frustrate the purpose of the statutes expressing the will of Congress or unduly undermine the enforcement of the public laws." Id. (quoting Hulsey, 22 F.3d at 1489). The estoppel requested in this case fails both of these tests.

BLM's mandate to manage public lands is found in the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701-84. In passing FLPMA, Congress expressed its intent that "the public lands be retained in Federal ownership, unless as a result of the land use planning procedure provided for in this Act, it is determined that disposal of a particular parcel will serve the national interest." 43 U.S.C. § 1701(a)(1); see also id. at (a)(9) (Congressional policy that government should receive "fair market value of the use of the public lands and their resources"). To estop the government from complaining of a trespass would effectively permit the trespasser to enjoy the use of those lands without color of title, without reference to FLPMA's land use planning procedure, without payment of fair market value, and without any determination that such transfer would be in the national interest. Moreover, it would prevent the government from effectively enforcing the laws against trespassing on the public lands. See, e.g., 18 U.S.C.

8

§ 1863 (making trespass on certain public lands a crime); 43 U.S.C. § 1061 (prohibiting inclosures of public lands); see also United States v. Brown, 672 F.2d 808, 810 (10th Cir. 1982) (occupants of unpatented mining claims are "subject to trespass claims and ejectment actions by the United States if the land cannot be patented").

The Supreme Court has held:

> The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of property cannot by their conduct cause the government to lose its valuable rights by their acquiescence, laches, or failure to act.

United States v. California, 332 U.S. 19, 40 (1947). See also Utah Power & Light Co. v. United States, 243 U.S. 389, 404 (1917) (interests in public lands may be acquired only through procedures established by Congress); United States v. Osterlund, 671 F.2d 1267, 1268 (10th Cir. 1982) ("courts have no power to adjust the parties' equities in determining title to federal lands" because Congress alone determines how public lands will be managed). BLM officials do not have authority to dispose of public lands except through statutory procedures. To allow a trespasser on public lands to estop the government from remedying the trespass would be contrary to the policy underlying the Supreme Court's California decision, the laws against trespass on public lands, and Congress' clearly expressed policy to dispose of interests in public lands only through statutory procedures.

9

We have found only one case, United States v. Wharton, 514 F.2d 406 (9th Cir. 1975), holding the government estopped from complaining of a trespass, not supported by a colorable claim of title, on public lands. In Wharton, the IBLA denied a patent under the Color of Title Act, which authorizes adverse possession claims under limited circumstances against the United States if possession began prior to 1901. See 43 U.S.C. § 1068. The Ninth Circuit affirmed the IBLA's denial, but reversed nevertheless because it concluded that the government had deliberately misled the appellants into believing that the time had expired for filing a claim under the Desert-Land Entry Act. Wharton, 514 F.2d at 410. In that case, decided before Congress passed FLPMA, the Ninth Circuit gave effect to Congress' policy preferences expressed through statutory enactments. We do the same today. Wharton retains its vitality in cases where the government's misconduct deprives a party of the opportunity to establish a colorable claim of title.

BLM's alleged misconduct in this case does not parallel the misconduct supporting estoppel in Wharton. Double J was represented by counsel that had full opportunity to satisfy himself of all aspects of the exchange prior to closing. Having failed to do so, he complains that he was misled. A careful review of the record reveals that the misconduct alleged, even if proven to be true, could not have deprived Double J of any opportunity to cure the Section 29 trespass. First, the Memorandum of Understanding regarding the exchange, signed by Jaffe as President of Double J, clearly indicates that the government did not offer any land in Section 29. Second, BLM found, and the IBLA agreed, that

10

curing that trespass "would have unbalanced the value" of the lands exchanged. Double J

Land, 126 I.B.L.A. at 108-09; see also Notice of Realty Action, 51 Fed. Reg. 15388

(April 23, 1986) (description of lands offered to Double J accompanied by BLM

statement that "[t]he values of the land to be exchanged have been determined to be

approximately equal"). Double J does not contest this finding; it remains free to propose

another land exchange. From the record we conclude that Double J has not been deprived

of an opportunity to acquire title to the land in question; rather, it seeks to gain through

estoppel what it failed to obtain through the FLPMA exchange process.

Because Congress' policy choice would be thwarted by the application of estoppel

in this case, we cannot recognize the possibility of estoppel against the government here.

In re DePaolo, 45 F.3d at 376; Hulsey, 22 F.3d at 1489. Double J elected to rely entirely

on its estoppel argument. It did not seek any other potential remedy. We conclude that

Double J has alleged no interest requiring due process protection.[2] The IBLA and district

court did not err in rejecting Double J's estoppel and due process claims.

_____

[2] Our resolution of this question is in no way foreclosed by our statement in Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1565 (10th Cir. 1994) that, when due process is raised in an administrative appeal, we may affirm "only on the grounds articulated by the agency itself." In Olenhouse, there was no question that appellants, farmers participating in a government subsidy program, had a property interest in the benefits provided by the program. See id. at 1567-68. A question of due process is not raised when, as here, the party claiming a violation cannot show a constitutionally protected interest. Richman, 48 F.3d at 1143. Olenhouse does not prevent us from inquiring, as a threshold matter, whether appellants have an interest protected by due process.

11

## III

The only question remaining is whether Peter Jaffe is a proper party to this action. He argues that as a corporate officer of Double J, he may not be held personally liable for its actions. Although the IBLA did not address the question, it affirmed the Notice of Trespass, which named Jaffe, in full. The district court addressed the issue and affirmed, noting that Jaffe had presented no evidence showing that he is not a proper party. This was error.

When an agency makes a decision, "the grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record." Olenhouse, 42 F.3d at 1575. Here, the agency has provided no explanation whatsoever of its decision to keep Jaffe in the case, and the record, as the district court noted, is devoid of facts supporting the conclusion that Jaffe, as an individual, is trespassing on federal land. The burden is not on the petitioner to show that beneath the agency's silence lies an arbitrary and capricious conclusion. It is impossible to conclude from the IBLA's silence, and the absence of evidence linking Jaffe personally to the trespass, that its decision not to dismiss Jaffe was the product of reasoned decisionmaking. The district court erred in affirming its decision on a silent record. See id. In the absence of any evidence that Jaffe was properly named in the Notice of Trespass, it was arbitrary and capricious for the IBLA to keep him in the case.

**CONCLUSION**

We REVERSE the judgment of the district court with regard to the status of Peter Jaffe as a party in this case, and REMAND with instructions to vacate the Notice of Trespass as to him. In all other respects, we AFFIRM.