HOLLAND LIVESTOCK RANCH, a Co-Partnership composed of Bright-Holland Company, Marimont-Holland Company and Nemmeroff-Holland Company, and John J. Casey, Plaintiffs-Appellants,

v.

UNITED STATES of America; Cecil Andrus, Secretary of the Interior; Edward Roland, California State Director of the Bureau of Land Management; Edward Hastey, Nevada State Director of the Bureau of Land Management; and Does I through XX, inclusive, Defendants-Appellees.

No. 79–4681.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1981.

Decided Sept. 8, 1981.

Thomas L. Belaustegui, Johnson, Belaustegui & Robinson, Reno, Nev., for plaintiffs-appellants.

Burton J. Stanley, Sacramento, Cal., for defendants-appellees.

Before SKOPIL, SCHROEDER, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Holland Livestock Ranch, a co-partnership, and John J. Casey, its president and sole stockholder, appeal the district court's entry of adverse summary judgment in their suit against the United States of America, the Secretary of the Interior, the California Director of the Bureau of Land Management, and the Nevada Director of the Bureau of Land Management. *See Holland Livestock Ranch*, 39 I.B.L.A. 272 (1979). The plaintiffs sought to overturn various administrative-level determinations of willful trespass on federal lands which resulted in reduction and revocation of certain grazing privileges under the Taylor Grazing Act, 43 U.S.C. §§ 315 to 315o–1 (1976). Plaintiffs contest the district court's entry of summary judgment.[1] *See* 5 U.S.C. § 706(2)(A) (1976). Jurisdiction on appeal is based on 28 U.S.C. § 1291 (1976).

## I. FACTS

John J. Casey, controlling owner of Holland Livestock Ranch, held grazing permits from the Bureau of Land Management for the Susanville (California) and Winnemucca (Nevada) grazing districts. Using planning unit maps and United States Geological Survey topographical maps where available, Bureau of Land Management employees determined that Casey's cattle were trespassing on public land. In addition, his cattle were sighted upon private, unfenced land with unrestricted access to adjoining public lands. The Bureau issued numerous trespass notices to Casey and, when he refused to remove them from public lands on which they were not entitled to graze, impounded several of his cattle.

The Bureau initiated two separate administrative proceedings against Casey. In No. 2–75–2, involving fifteen alleged trespasses in the Susanville district and ten alleged trespasses in the Winnemucca district, the administrative law judge reduced Casey's grazing privileges in both districts by 40% and assessed trespass damages. In No. 2–77–1, involving three trespasses in the Susanville district, the administrative law judge revoked Casey's grazing privileges in that district and assessed damages. In a consolidated appeal, the Interior Board of Land Appeals affirmed the total revocation of the Susanville grazing privileges and the 40% reduction of the Winnemucca grazing privileges and modified the damage computations in both cases.

Casey filed suit in the district court seeking to set aside the Interior Board of Land Appeals decision. On cross-motions for summary judgment and after hearing, the district court granted the government's mo-

1. Because the district court's entry of summary judgment after cross-motions on various grounds did not specify its reasons, Casey also challenges the district court decision on jurisdictional grounds. One of the United States' arguments for summary judgment was that the district court lacked jurisdiction under the "agency discretion" exception to reviewability of agency decisions. Casey treats the district court's entry of summary judgment to be holdings both on jurisdiction and on the merits but does not explain why the district court would enter summary judgment, rather than a dismissal, if it had based its ruling on jurisdictional grounds. The United States interprets the summary judgment as a ruling against its jurisdictional objections and concedes that cases subsequent to the district court's summary judgment clearly establish that the court properly denied its jurisdictional claim. We agree.

tion and entered judgment for the government. Casey appeals.

## II. ANALYSIS

Under section 3 of the Taylor Grazing Act, 43 U.S.C. § 315b (1976), the Secretary of the Interior is authorized to issue permits to graze livestock on federal grazing districts to settlers, residents, and other stock owners. Grazing permits may be reduced or revoked by the Secretary in certain prescribed circumstances:

> A grazing license or permit may be suspended, reduced, or revoked, or renewal thereof denied for a clearly established violation of the terms or conditions of the license or permit, or for a violation of the act or of any of the provisions of this part, or of any approved special rule.

43 C.F.R. § 9239.3-2 (1977); *accord, Diamond Ring Ranch, Inc. v. Morton*, 531 F.2d 1397, 1402-03 (10th Cir. 1976). *See also* 43 U.S.C. § 1752(a) (Supp. III 1979). As against the United States, a permittee can acquire no right or interest in the federal grazing lands.

> So far as consistent with the purposes and provisions of this subchapter, grazing privileges recognized and acknowledged shall be adequately safeguarded, but . . . the issuance of a permit pursuant to the provisions of this subchapter shall not create any right, title, interest, or estate in or to the lands.

43 U.S.C. § 315b (1976).

Grazing trespasses appear to be the most common violation resulting in administrative reduction or revocation of grazing permits. A grazing trespass exists when livestock are grazed on federal public land in excess of authorized permit use or without an appropriate permit or license. *Eldon Brinkerhoff*, 24 I.B.L.A. 324 (1976); *Eldon L. Smith*, 8 I.B.L.A. 86 (1972). The Interior Board of Land Appeals has administratively

> limited severe reductions of a licensee's or permittee's grazing privileges to cases involving the following elements: (1) the trespasses were both willful and repeated; (2) they involved fairly large numbers of animals; (3) they occurred over a fairly long period of time; and (4) they often involved a failure to take prompt remedial action upon notification of the trespass.

*Eldon Brinkerhoff*, 24 I.B.L.A. 324, 337 (1976).

Casey contends that access trespass, by definition, is an insufficient basis to establish trespass when the result of that trespass is the revocation and reduction of grazing permits. Access trespass is presumed when cattle are found upon unfenced private land contiguous to restricted public land. This assumption is based on the principle that "as the boundaries between the federal range and private lands [are] of a legal rather than a physical nature it strains credulity to believe that the animals grazing would respect the same." *Midland Livestock Co.*, 10 I.B.L.A. 389, 402 (1973). The United States contends that access trespasses, together with evidence of actual trespasses, provided substantial evidence to support the Board's decision. We agree.

The finding of trespass is adequately supported by evidence of actual trespasses. Nonetheless, we must decide whether the access trespass theory is valid, since the Board relied on that theory in computing damages. Had it not done so, its damage figure would have been smaller.[2]

Administrative agencies are entitled to create evidentiary presumptions. *See NLRB v. Baptist Hospital, Inc.*, 442 U.S. 773, 789, 99 S.Ct. 2598, 2607, 61 L.Ed.2d 251 (1979); *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 800, 65 S.Ct. 982, 986, 89 L.Ed. 1372 (1945). These presumptions are "traditionally accorded considerable deference." *NLRB v. Baptist Hospital, Inc.*, 442 U.S. at 796, 99 S.Ct. at 2611 (Bren-

2. The ALJ in No. 2-75-2 subtracted the number of cattle "trespassed" by access before computing damages. *See* Excerpt of Record at 26 (IBLA decision). The IBLA reversed this portion of the ALJ's decision and recomputed damages to include those of the "access trespassed" animals. *See id.* at 26-29.

nan, J., concurring); *NLRB v. Los Angeles New Hospital*, 640 F.2d 1017, 1020 (9th Cir. 1981); *see NLRB v. Local 103, International Association of Iron Workers*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978). The validity of such a presumption depends, in a varying degree, "upon the rationality between what is proved and what is inferred." *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 493, 98 S.Ct. 2463, 2469, 57 L.Ed.2d 370 (1978) (quoting *Republic Aviation Corp. v. NLRB*, 324 U.S. at 805, 65 S.Ct. at 988). The presumption may be based upon policy as well as probability. *NLRB v. Silver Spur Casino*, 623 F.2d 571, 578 (9th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981); *NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 303–04 (9th Cir. 1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979). The usefulness of a presumption is also a factor to be considered in assessing its validity. *NLRB v. Baptist Hospital, Inc.*, 442 U.S. at 789–90, 99 S.Ct. at 2607–08.

The presumption at issue rationally infers that livestock with unrestricted access to contiguous public lands will use that access. The inference is supported by evidence that the stock has previously made use of the access. Without the presumption, proving the existence of every trespass by livestock onto public land would be extremely difficult, if not impossible.

Under the facts here, we need not decide whether unrestricted access will always give rise to a presumption of trespass. But where, as here, there is evidence of actual trespasses in addition to unrestricted access, the Interior Board of Land Appeals may raise a rebuttable presumption of trespass based upon the existence of unrestricted access.

Casey also argues that the access trespass doctrine is inadequate to show damages. We disagree. Once injury has been proven, the fact that damages are not susceptible to precise measurement does not preclude recovery. *E. g., Kissell Co. v. Gressley*, 591 F.2d 47, 50 (9th Cir. 1979); *James v. United States*, 483 F.Supp. 581, 487 (N.D.Cal.1980) (California law); C. McCormick, *Damages* § 27, at 101 (1935). In such cases, the factfinder is allowed to make a reasonable inference of damages from the facts adduced, *e. g., Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562–63, 51 S.Ct. 248, 250–51, 75 L.Ed. 544 (1931) (tortfeasor's wrongdoing prevented accurate assessment of damages); *Perma Research & Development v. Singer Co.*, 542 F.2d 111, 116 (2d Cir.), *cert. denied*, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976), so long as the damages are not based on speculation or guess, *e. g., PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 417 F.2d 659, 663 (9th Cir. 1969), *cert. denied*, 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 99 (1970); C. McCormick, *supra*, § 26, at 99. We find no error in the use of access trespass as a reasonable inference for the computation of damages.

Casey also contends that the evidence of his willfulness in trespassing was insufficient to support the administrative decisions to revoke and reduce his permits and to impose double damages.[3] Unless that choice is arbitrary, courts ordinarily defer to an agency's choice of sanctions. *Diamond Ring Ranch, Inc. v. Morton, supra*, at 1407. In the grazing trespass context, the Board has formulated the following standard for willfulness:

> Although "willfulness" is basically a subjective standard of the trespasser's intent, it may be proved by objective facts. Thus, in determining whether grazing trespasses are "willful," intent sufficient to establish willfulness may be shown by evidence which objectively shows that the circumstances did not comport with the notion that the trespasser acted in good faith or innocent mistake, or that his conduct was so lacking in reasonableness or responsibility that it became reckless or negligent.

3. Double damages for forage are assessed when the trespass is repeated. *See also* Excerpt of Record at 41 (IBLA decision).

*Eldon Brinkerhoff*, 24 I.B.L.A. 324 (1976). Casey reviews extensively the evidence on "circumstances beyond [his] control" and on his efforts to control his cattle. The record, however, contains substantial evidence of Casey's willfulness, including inadequate employment of control staff, poor fence conditions, a history of trespass and of ignoring the conditions upon his permits, and a failure to remedy trespasses upon notification. *See also Diamond Ring Ranch*, 531 F.2d at 1405–06. Even disregarding the access trespass evidence, the record supports a finding of willfulness.

 Casey's final contention is that the Interior Board of Land Appeals and the district court committed "errors of law" by not finding that the government was estopped from alleging the trespasses and by not holding that it was legally impossible for Casey to have committed trespass. His contentions are based on (1) the government's failure to maintain and to construct certain fences, which he asserts it was obligated to do by law and by contract and (2) its management plan, which created certain unfenced division lines and which allowed wild burros and horses to roam freely, reducing the value of his permits and precipitating his trespasses. Equitable estoppel is established when it is shown that:

"(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

*United States v. Wharton*, 514 F.2d 406, 412 (9th Cir. 1975) (quoting *United States v. Georgia-Pacific Corp.*, 421 F.2d 92, 96 (9th Cir. 1970)). When the party against whom estoppel is alleged is the United States, a showing of "affirmative misconduct" rather than "mere neglect" must be made. *Id.* at 409–10. The record fails to establish that the government engaged in affirmative misconduct or had a legal obligation either to fence its lands or to restrain wild horses and burros.

Affirmed.