**HOLLAND LIVESTOCK RANCH, a Co-Partnership composed of Bright-Holland Company, Maremont-Holland Company and Nemeroff-Holland Company; and John J. Casey, Plaintiffs,**

v.

**UNITED STATES of America, James Watt, Secretary of the Interior, Edward Spang, Nevada State Director of the Bureau of Land Management; Frank C. Shields, District Manager of the Winnemucca District of the Bureau of Land Management; DOES I through XX, Inclusive, Defendants.**

**No. CV–R–82–278–ECR.**

United States District Court, D. Nevada.

May 31, 1984.

Thomas L. Belaustegui, Reno, Nev., for plaintiffs.

Lamond R. Mills, U.S. Atty., Las Vegas, Nev. by Burton J. Stanley, Sp. Asst. Atty. Gen., Sacramento, Cal., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

### Introduction

Plaintiff Casey [1] seeks review of the final decisions of the Winnemucca District Manager of the Bureau of Land Management (Bureau), revoking plaintiff's livestock grazing permits. The decisions were based on a finding that plaintiff had committed "willful and repeated willful" trespasses on public land. The Magistrate's Report and Recommendation (Report) concluded that the Bureau's determination that plaintiff was a willful trespasser on Bureau land was "arbitrary and capricious," and recommended that this Court order the Bureau to issue a grazing permit to the plaintiff. This matter is before the Court on defendant's Objections to the Report.

### Background

Under the version of 43 C.F.R. § 4140.-1(b)(1) in effect in 1981,[2] livestock may not be on public lands without a permit, lease, or other grazing use authorization. For a willful, or willfully repeated, violation of this section, monetary penalties, known as "settlements," are imposed under § 4150.3. In addition,

> The authorized officer shall suspend the grazing use authorized under a grazing permit, in whole or in part, or shall cancel a grazing permit or lease and grazing preference, in whole or in part, under Subpart 4160 of this title for repeated willful violation by a permittee or lessee of § 4140.1(b)(1) of this title.

Id. § 4170.1–1(b); see also id. § 4150.3.

Plaintiff was cited (# NV–020–3–299 (Citation '299)) for allowing his livestock to trespass on public land on three separate occasions in late 1981 and early 1982. On May 24, 1982, he offered to settle the citation. His settlement check was received by the Bureau, but it has been placed in a suspense account. Plaintiff claims that the trespasses "were settled for all purposes...." However, the Bureau's District Manager chose to consider the settlement as "full payment of the monetary damages" for which plaintiff was liable under 43 C.F.R. § 4150.3. He then proceeded to cancel plaintiff's grazing permits, pursuant to §§ 4150.3 and 4170.1–1(b). See Notice of District Manager's Final Decision (July 8, 1982) (reproduced as Exh. A to Complaint). This decision was based on

---

1. The other plaintiffs in this action are corporate entities that plaintiff Casey apparently controls to some degree. Where applicable, references to plaintiff Casey shall therefore be deemed to refer to the other plaintiffs as well.

2. All C.F.R. references are to the 1981 edition that was in effect at the time of the incidents in question.

"the entire file in this matter,"[3] and on the District Manager's determination that the '299 trespass was a "willful and repeated willful violation of ... 43 C.F.R. § 4140.1(b)(1)." Based on the July 8 decision, the Bureau also rejected two grazing permit applications filed by the plaintiff. Notice of District Manager's Final Decision (July 9, 1982) (Exh. B to Complaint). Plaintiff filed the instant action seeking relief from these decisions. In an Order dated March 19, 1984, we stated that the following facts were to be considered established for the purposes of these proceedings:

1. At the time of the incidents at issue, plaintiff's private property (the "Granite Ranch") was only partially enclosed by fencing.

2. There have been numerous and substantial previous incidents of trespassing by plaintiff's cattle on public land.

3. Cattle belonging to plaintiff were observed in trespass on public land on December 10, 1981, and January 8, 1982.

## Analysis

### Standard for Termination of Grazing Privileges

■ As the Ninth Circuit has noted, The Interior Board of Land Appeals has administratively limited severe restrictions of a licensee's or permittee's grazing privilege to cases involving the following elements: (1) the trespasses were both willful and repeated; (2) they involved fairly large numbers of animals; (3) they occurred over a fairly long period of time; and (4) they often involved a failure to take prompt remedial action upon notification of the trespass.

*Holland Livestock Ranch v. United States*, 655 F.2d 1002, 1005 (9th Cir.1981) (*Holland I*) (citing *Eldon Brinkerhoff*, 24 I.B.L.A. 324, 337 (1976)). "Willfulness" in turn depends on whether there is evidence "which objectively shows that the circumstances did not comport with the notion

that the trespasser acted in good faith or [by] innocent mistake, or that his conduct was so lacking in reasonableness or responsibility that it became reckless or negligent," *id.* at 1006 (citing *Brinkerhoff, supra*, 24 I.B.L.A. at 324). Factors such as "inadequate employment of control staff, poor fence conditions, a history of trespass and of ignoring the conditions upon his permits, and a failure to remedy trespasses upon notification" constitute evidence of willfulness. *Id.* at 1007.

### Effect of the Settlement

■ Plaintiff contends that the District Manager's decision was improper because the '299 trespasses were "settled for all purposes." However, a "settlement" under 43 C.F.R. § 4150.3 applies only to monetary penalties, and the section specifically contemplates further punitive measures for "willful, or willfully repeated" violations.

The interpretation suggested by plaintiff may be consistent with the generally accepted meaning of "settlement." *See, e.g., Weight v. Miller*, 16 Utah 2d 112, 396 P.2d 626, 627 (1964); 15A C.J.S. *Compromise and Settlement* § 51b at 289 (1967) ("It will be presumed that a general settlement includes all matters in controversy and all demands existing at the time between the parties."). However, the Bureau is not bound by this interpretation. Furthermore, there is no evidence that a settlement was ever reached on the terms proposed by the plaintiff. Instead, pursuant to the terms of § 4150.3, the Bureau considered the settlement only as payment for "the monetary damages incurred in trespass # NV–020–3–299," and then proceeded, as it was required to do under the same section, to "take action under § 4170.1–1." There is no evidence that the Bureau promised plaintiff, expressly or impliedly, that it would do anything other than what it did.

In another case that peripherally involved the '299 citation, we stated that the Bureau has "followed the proper procedure

---

**3.** Some idea of what is contained in the "entire file in this matter" can be gained by examination of the examples of "adjudicated willful and/or repeated violations" summarized in the Final Decision.

in banking [plaintiff's settlement] check in a suspense account pending a decision as to whether the offer to compromise would be accepted by officials of the BLM who were authorized to do so." *Holland Livestock Ranch v. United States*, # CV–R–81–68–ECR (Document # 70 at 5) (reproduced as Exh. B to Document # 15 in the present case). No evidence has been presented to show that the status of the settlement check has changed in the intervening period. In the absence of a valid acceptance of plaintiff's settlement offer, there is no basis for plaintiff's claim that the '299 citation has been "settled for all purposes."

*Prior Trespass History*

When a violation of § 4140(b)(1) occurs, The authorized officer shall analyze the facts and circumstances·of the case and shall determine if the violation is nonwillful or willful and, if it is willful, whether it is a repeated violation.... * * * When violations are determined to be willful, or willfully repeated, ... the authorized officer shall take action under Section 4170.1–1.

*Id.* § 4150.3. The Magistrate concluded that § 4150.3

requires that the [Bureau's] District Manager first analyze the facts of a particular trespass and determine whether or not it is a wilful trespass. If he determines that it is wilful, then the decision must be made as to whether it is a repeated violation. * * * Hence, the finding of wilful or non-wilful violation should [be] separate from a consideration of the prior record.

Report at 5–6 & 12. She also concluded that the District Manager did not follow this two-step analysis.

■ For the reasons set forth below, we are unable to accept the Magistrate's interpretation of § 4150.3. While it is possible under this section to analyze the issue of willfulness without considering a licensee's

prior record, the text of the section does not require such a procedure. Nothing in the text of § 4150.3 forbids the consideration of the permit holder's prior record in the initial determination of willfulness. In fact, to forbid the District Manager to consider a licensee's prior record would result in the exclusion of probative evidence. Evidence of the commission of previous similar acts can be highly relevant to the issue of intent. See Fed.R.Evid. 404(b); *Eaves v. Penn*, 587 F.2d 453, 464 (10th Cir.1978); 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[12] at 404–65—404–67 (1982) ("[T]he oftener a like act has been done, the less probable it is that it could have been done innocently." (citing 2 Wigmore, Evidence § 312 (3d ed. 1940)).

Plaintiff contends that to allow consideration of a licensee's prior record in determining willfulness would result in "circular" reasoning in decisions made by the Bureau under § 4150.3. We reject this contention. The fact that § 4150.3 contemplates the consideration of a licensee's prior record in determining whether or not his grazing privileges are to be revoked, does not bar the Bureau from considering his prior record both as a factor in determining willfulness and as a factor in determining whether a trespass was repeatedly willful.[4] Thus, we find no basis for accepting plaintiff's contention that the Bureau should be prohibited from considering such evidence in determining willfulness under § 4150.3.

*Failure to Remedy Trespasses Upon Notification*

■ The administrative record indicates that plaintiff was personally served with a trespass notice on January 18. The magistrate found that he did not respond until early February. Report at 10. While plaintiff testified that was absent from his ranch for two weeks during this period, *id.*, such an absence, in and of itself, is not a justification for plaintiff's failure to re-

---

**4.** The Bureau has concluded that a more severe penalty for repeated willful violations of § 4140.1(b)(1) will be imposed. *Compare* 43 C.F.R. 4170.1–1(b) (Bureau *shall* cancel a grazing permit for repeated willful violation) (emphasis added) *with id.* § 4170.1–1(a) (Bureau *may* cancel grazing permit (or take other similar action) for other violations) (emphasis added).

spond. Plaintiff has offered no evidence to show that this absence prevented him from acting, through his employees if necessary, to correct the situation.[5] Under these circumstances, the Bureau could infer that plaintiff was consciously indifferent as to whether the trespasses continued or not, and was justified in considering plaintiff's failure to act following receipt of the notice as evidence of willfulness.

Furthermore, while it is not clear what type of response was made in early February, there is substantial evidence that it was not effective in terms of solving the trespass situation. On March 5, 1982, a Bureau employee named Clinton Oke advised plaintiff that he "still has trespass livestock out on the public lands." Plaintiff did not deny the accuracy of the statement, but instead said that he would remove the livestock.[6] The Bureau was entitled to view plaintiff's statement as an admission that the trespassing cattle were his, and to conclude that he had failed to remedy the trespass situation upon notification. This constituted additional evidence in support of a finding of willfulness. *Holland I, supra,* 655 F.2d at 1007.

*Other Factors*

■ The Magistrate considered plaintiff's fence-building efforts as evidence that the trespasses were not willful. Report at 15. Such efforts, however, did not affect plaintiff's duty to keep his cattle confined within his own property. There is substantial evidence in this case that plaintiff put livestock on his property knowing that it was not completely fenced, and knowing that the cattle would be tempted to go off of his property and on to public property in order to reach water. See Report at 14. One who knows that a particular consequence or consequences are substantially certain to result from his act, but

still goes ahead, "is treated by the law as if he had in fact desired to produce the result." Restatement (Second) of Torts § 8A, comment b (1965). Under these circumstances, the Bureau in determining willfulness was justified in discounting the significance of plaintiff's unsuccessful efforts to control his cattle.[7]

The Magistrate also concluded that partial fencing restricted the access of the livestock to public land and thus precluded application of the access trespass theory. Report at 16. However, there is substantial evidence that the partial fencing did not provide a meaningful barrier to plaintiff's livestock. Therefore, we conclude that the Bureau properly applied the access trespass theory.

■ We also reject any suggestion that these trespasses are excused because plaintiff's cattle "have been trained through generations to graze in the [burn closure] area." See Report at 13. Plaintiff's claim that he "never had any trespass problems with the cattle in this area prior to the 1976 burn," even if true, is also no excuse. The years that have elapsed since 1976 provided ample time in which plaintiff could have solved any problems that resulted from the burn closure.

*Conclusion*

The facts of the present case are in many respects similar to those that the court confronted in *Holland I, supra.* Plaintiff's property is only partially enclosed by fencing, and plaintiff testified that cattle regularly go outside of those fences that do exist in order to reach water. There was no evidence that plaintiff has taken any meaningful action to correct this situation. Plaintiff has a long and substantial "history of trespass and of ignoring the conditions on his permits." He failed to remedy

---

**5.** There is no evidence to indicate that the correction of these trespasses in response to the notices was a matter that should have required plaintiff's personal involvement or supervision.

**6.** Plaintiff has not objected to the consideration of this statement on evidentiary grounds.

**7.** In view of the fact that plaintiff's property was not completely fenced, and that, by the plaintiff's own admission, livestock simply went around the end of the fence to reach public land (see Report at 14), we do not consider the condition of the existing fences on plaintiff's property to be an issue.

the trespasses after notification, but instead chose to be absent from his property even after being personally served with notice of the trespasses. Finally, the fact that plaintiff's employees are unable to keep the cattle from trespassing indicates that his control staff is still inadequate.

■■■ We also find that revocation of the plaintiff's grazing privileges was a proper sanction under the test set forth in *Holland I, supra,* 655 F.2d at 1005.[8] We note that previous incidents have resulted in reduction of plaintiff's grazing privileges rather than revocation. However, it is apparent that such comparatively moderate sanctions have failed to modify plaintiff's behavior to any significant degree. Accordingly, we find that the District Manager's decision to impose a more drastic penalty was justified.

The conclusion we reach here should not be taken as an endorsement of all aspects of the Bureau's decisionmaking processes. The Final Decision is not a model of clarity,[9] and some invalid factors were apparently considered by the District Manager.[10] Nevertheless, when these invalid factors are removed from consideration, enough valid factors remain to justify his decision under the "arbitrary and capricious" standard of review. *See N.L.R.B. v. Newport News Shipbuilding & Drydock Co.,* 308

U.S. 241, 247, 60 S.Ct. 203, 206, 84 L.Ed. 219 (1939); *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 290, 95 S.Ct. 438, 441–442, 444, 42 L.Ed.2d 447 (1974).

IT IS, THEREFORE, HEREBY ORDERED that defendant's objections to the Magistrate's Report and Recommendation are sustained.

IT IS FURTHER ORDERED that this action is dismissed, in that there is no basis to disturb the Final Decisions of the Bureau's District Manager in this case.

8. Plaintiff contends that the number of cattle involved in the '299 trespass was not "fairly large." The Magistrate's report, however, indicates that "51 cattle identified as Casey's were on public lands" on January 8, 1982 (Report at 9) and we conclude that this constitutes a "fairly large" number of cattle within the meaning of *Holland I.* The other elements of the *Holland I* test have been previously discussed in the text of this Order.

9. "Based on … the facts and circumstances involving grazing trespass # NV–020–3–299," the Bureau determined this trespass "to be a willful and repeated willful violation…." See Final Decision (July 8, 1982) at 2. This language does not indicate that the District Manager considered plaintiff's prior trespassing history in making this determination. However, the Magistrate found that the District Manager determined that the '299 trespass was willful in part because "it was another in a long series of trespasses." Report at 10.

We find that the District Manager's testimony is not inconsistent with the statement made in the

Final Decision. The Final Decision did not purport to list in exhaustive detail the factors that the District Manager relied upon in making his determination. There is nothing in the Final Decision to indicate that the District Manager did not also consider, as he was in fact entitled to, plaintiff's prior trespass history in determining whether the '299 trespass was "willful and repeated willful."

10. The Magistrate properly concluded (Report at 16) that since plaintiff specifically denied any wrongdoing in making his settlement offer, the fact that he settled at the willful rate cannot be used against him to show that the trespasses were willful. *See Bureau of Land Management v. Casey,* Nevada 2–80–4 (SC) at 19 (Oct. 15, 1982) (Reproduced as Exh. A to Plaintiff's Brief (Document # 34)).

In addition, it is possible that the aerial count made on December 18, 1981, was invalid for failure to positively identify the livestock as belonging to the plaintiff, but we need not reach this issue at this time.