**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 29 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| YACHT WEST, LTD., a Cayman Islands company, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> CHRISTENSEN SHIPYARDS, LTD., a Washington corporation; DAVID H. CHRISTENSEN, <br><br> Defendants - Appellants. | No. 10-35382 <br><br> D.C. No. 3:07-cv-01547-KI <br><br><br> MEMORANDUM[*] |

| | |
|---|---|
| YACHT WEST, LTD., a Cayman Islands company, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> CHRISTENSEN SHIPYARDS, LTD., a Washington corporation; DAVID H. CHRISTENSEN, <br><br> Defendants - Appellees. | No. 10-35383 <br><br> D.C. No. 3:07-cv-01547-KI |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appeal from the United States District Court
for the District of Oregon
Garr M. King, Senior District Judge, Presiding

Argued and Submitted November 14, 2011
Portland, Oregon

Before: FISHER, PAEZ, and CLIFTON, Circuit Judges.

We consider here the cross-appeals by Christensen Shipyards, Ltd. and Yacht West, Ltd. from the district court's post-trial order granting in part and denying in part the parties' motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). We have jurisdiction under 28 U.S.C. § 1291, and affirm.

## I. *Christensen's Rule 50(b) Motion*

A jury's verdict of compensatory damages is reviewed for substantial evidence. *In re Exxon Valdez*, 270 F.3d 1215, 1247–48 (9th Cir. 2001). It must be affirmed "unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996). In calculating damages, a factfinder is entitled to "make a reasonable inference of damages from the facts adduced." *Holland Livestock Ranch v. United States*, 655 F.2d 1002, 1006 (9th Cir. 1981).

2

1. Substantial evidence supported the jury's award of $2.6 million to Yacht West for the nonconforming exhaust system. Yacht West's expert testified that his conceptual analysis showed that it was possible to reroute the exhaust system to discharge at the rear of the boat for $2.6 million, and that a variety of specific implementations of his general concept were feasible.

2. Substantial evidence did not support the jury's award of $2 million to Yacht West for a structural defect in the form of either a vibration or weight in excess of the contract requirements. A Yacht West expert opined that the vibration was "hull-springing vibration" caused by a "lack of stiffness in the structure," but admitted that he could not tell the jury how the problem could be corrected because "it requires further testing." Another Yacht West expert testified that it would cost $4 million "to repair the structural inadequacy of the vessel," but that it would first entail "a very substantial effort . . . to find out why the boat is vibrating the way that it is."

Because neither Yacht West expert could identify the source of the vibration or specify how to fix it, the jury was required to impermissibly speculate about the provenance and redressability of the vibration. The district court therefore correctly granted Christensen's Rule 50(b) motion on this issue.

## II. *Yacht West's Rule 50(b)Motion*

1. Substantial evidence supported the jury's award of $1,674,242 to Christensen for delay damages not stemming from unabsorbed overhead. Interpretation of an integrated agreement "is to be determined by the trier of fact if it depends on . . . a choice among reasonable inferences to be drawn from extrinsic evidence." *Berg v. Hudesman*, 801 P.2d 222, 229 (Wash. 1990) (quoting Restatement (Second) of Contracts § 212 (1981)) (internal quotation marks omitted). The parties presented testimony to the jury about the meaning of the contract. The jury received a general instruction and special verdict form, and neither party objected that the jury instructions or special verdict were improper. Further, Christensen's expert testified that Yacht West and its contractors and suppliers delayed construction by failing to provide necessary information and materials, and that these delays subsumed any delays caused by Christensen. Substantial evidence supported the jury's finding that the contract permitted an award for delay damages and the amount of delay damages it awarded.

2. "The *raison d'etre* of *Eichleay* requires at least some element of uncertainty arising from suspension, disruption or delay of contract performance. Such delays are sudden, sporadic and of uncertain duration. As a result, it is impractical for the contractor to take on other work during these delays." *C.B.C. Enters. v. United*

4

*States*, 978 F.2d 669, 675 (Fed. Cir. 1992). In Washington, unabsorbed overhead is recoverable "if the delay prevented the contractor from obtaining contracts during the delay period that would have 'absorbed' the ongoing overhead expense." *Golf Landscaping, Inc. v. Century Constr. Co.*, 696 P.2d 590, 593 (Wash. Ct. App. 1984). Christensen's workforce was never placed on standby during the construction of the *Party Girl*, and there is no evidence that the delays prevented Christensen from taking on new contracts. Christensen is therefore precluded from obtaining damages for unabsorbed overhead.

**AFFIRMED.**

FILED

DEC 29 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Yacht West, Ltd. v. Christensen Shipyards, Ltd.,* No. 10-35382

RAYMOND C. FISHER, Circuit Judge, concurring in part and dissenting in part:

I concur in all but part I.2 of the memorandum disposition, from which I respectfully dissent. I would hold that substantial evidence supports the jury's award of $2 million to Yacht West for the structural defect. All parties agree that the yacht is overweight, that it suffers from a vibration, that the vibration is structural and hull-related and that further evaluating and remedying the defect will be extremely costly. Yacht West's expert testified that the defect would cost at least $4 million to repair, and Christensen did not offer a repair estimate of its own to refute that testimony. There was also testimony that the structural defect affected the market value of the yacht, which in any event is self-evident, as well as the uses to which the yacht could safely be put. That the jury awarded Yacht West only half of what it requested further indicates that the jury exercised its discretion. It is true that Yacht West's experts could not isolate the precise source of the problem or set out a specific plan for repair without further evaluation, but I do not believe Yacht West was required to tear the vessel apart to establish an entitlement to damages. *See Holland Livestock Ranch v. United States*, 655 F.2d 1002, 1006 (9th Cir. 1981) ("Once injury has been proven, the fact that damages are not susceptible to precise measurement does not preclude recovery"). I accordingly dissent from part I.2 of the disposition.